UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILSON PENA LOJO,

              Petitioner,

      v.

MR. GARLAND, *United States Attorney General*, *et al.*,

              Respondents.

**DECISION AND ORDER**

6:22-CV-06340 EAW

---

## INTRODUCTION

Petitioner Wilson Pena Lojo ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Dkt. 1).  For the reasons that follow, the Court denies the petition.

## BACKGROUND

### I.    Factual Background

Petitioner is a native and citizen of Guatemala.  (Declaration of Deportation Officer Thomas R. Wood, Jr. (Dkt. 5 at 10-17) ("Wood Decl.") at ¶ 5).  On October 8, 2009, officers of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") encountered Petitioner at the Mercer County Jail in Trenton, New Jersey, where he was incarcerated.  (*Id*. at ¶ 6).  On August 3, 2010, Petitioner was transferred to ICE custody and served a Notice to Appear charging him as being

inadmissible under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (the "INA"). (*Id*. at ¶ 7).  On August 17, 2010, Petitioner conceded his removability, an immigration judge ("IJ") ordered him removed to Guatemala, and a warrant of removal was issued.  (*Id*. at ¶ 9).  Petitioner was removed to Guatemala on September 16, 2010.  (*Id*. at ¶ 10).

Petitioner thereafter reentered the United States on an unknown date at an unknown location without being inspected, admitted, or paroled by an immigration officer.  (*Id*. at ¶ 11).  On April 22, 2013, the United States Border Patrol encountered Petitioner in Texas and served him with a Notice of Intent/Decision to Reinstate Prior Order pursuant to § 241(a)(5) of the INA.  (*Id*. at ¶ 11).  Petitioner's prior order of removal was reinstated on April 29, 2013, and a warrant of removal was issued on May 8, 2013.  (*Id*. at ¶¶ 12-13).  Petitioner was removed to Guatemala a second time on May 10, 2013.  (*Id*. at ¶ 13).

Petitioner thereafter again reentered the United States on an unknown date at an unknown location without being inspected, admitted, or paroled by an immigration officer.  (*Id*. at ¶ 14).  On October 14, 2016, Petitioner was arrested and charged via criminal complaint filed in Trenton Municipal Court with aggravated sexual assault, sexual assault, and endangering the welfare of a child.  (*Id*.).  On November 1, 2016, ICE officers arrested Petitioner pursuant to a felony arrest warrant issued out of Trenton, New Jersey, and an immigration detainer was lodged.  (*Id*. at ¶ 15).  On November 16, 2016, Petitioner was again served with a Notice of Intent/Decision to Reinstate Prior Order pursuant to § 241(a)(5) of the INA.  (*Id*. at ¶ 16).

On July 11, 2018, Petitioner appeared in the Superior Court of New Jersey, Mercer County, and pled guilty to endangering the welfare of a child—sexual conduct with a child

by a non-caretaker.  (*Id*. at ¶ 17).  On November 2, 2018, he was sentenced to three years in the custody of the New Jersey Department of Corrections, to be followed by lifetime parole supervision.  (*Id*.).

Petitioner completed his New Jersey criminal sentence on March 15, 2019, and was transferred to ICE custody.  (*Id*. at ¶ 18).  He was again served with a Notice of Intent/Decision to Reinstate Prior Order pursuant to § 241(a)(5) of the INA.  (*Id*.).

On March 19, 2019, Petitioner claimed fear of returning to Guatemala and was referred to United States Citizenship and Immigration Services ("USCIS") for a reasonable fear interview with an asylum officer.  (*Id*. at ¶ 19).  On April 1, 2019, an asylum officer interviewed Petitioner and determined that he had established a reasonable fear of persecution.  (*Id*. at ¶ 20).  He was served with a Notice of Referral to IJ, and placed in withholding-only proceedings before the immigration court in Elizabeth, New Jersey. (*Id*.).

On May 2, 2019, Petitioner was provided notice that his custody status would be reviewed by ICE on June 3, 2019, and that if he was not removed within the statutory removal period, ICE would review his case for consideration of release on an order of supervision.  (*Id*. at ¶ 21).  Petitioner did not provide any information in support of release, and ICE determined that he was both a flight risk and a danger to a community, and thus not entitled to release.  (*Id*.).  ICE conducted a 180-day review of Petitioner's custody status in September of 2019, and again denied release.  (*Id*. at ¶ 22).

On August 1, 2019, Petitioner filed an application seeking withholding of removal and relief under the Convention Against Torture (the "CAT").  (*Id*. at ¶ 23).  A bond hearing

was scheduled before an IJ in New Jersey on October 4, 2019, but Petitioner sought an adjournment thereof.  (*Id*. at ¶ 24).  On December 29, 2019, ICE again reviewed Petitioner's custody status and issued a decision finding that he presented a danger to the community and a risk of flight and thus would not be released.  (*Id*. at ¶ 25).

On January 15, 2020, an immigration judge denied Petitioner's requests for withholding of removal under § 241(b)(3) of the INA, for withholding of removal under the CAT, and for deferral of removal under the CAT.  (*Id*. at ¶ 26).  Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA") on February 12, 2020.  (*Id*. at ¶ 27).

On March 19, 2020, May 13, 2020, and July 2, 2020, ICE again reviewed Petitioner's custody status and issued decisions finding that he presented a danger to the community and a risk of flight and thus would not be released.  (*Id*. at ¶¶ 28-29, 31).

On July 9, 2020, the BIA affirmed the IJ's decision.  (*Id*. at ¶ 32).  A warrant of removal was issued on July 20, 2020.  (*Id*. at ¶ 33).  Petitioner filed a petition for review ("PFR") with the United States Court of Appeals for the Third Circuit on August 11, 2020. (*Id*. at ¶ 34).  The Third Circuit granted Petitioner a temporary stay of removal on August 17, 2020.  (*Id*.).

On September 24, 2020, ICE again reviewed Petitioner's custody status and issued a decision finding that he presented a danger to the community and a risk of flight and thus would not be released.  (*Id*. at ¶ 35).  On December 9, 2020, Petitioner's custody was transferred from ICE in Newark to the BFDF.  (*Id*. at ¶ 36).  ICE continued to conduct

periodic reviews of Petitioner's custody status and continued to determine that release was not warranted.  (*Id*. at ¶¶ 38-41).

On November 5, 2021, the Third Circuit granted the PFR, vacated the BIA's order, and remanded the case.  (*Id*. at ¶ 42).  A custody proceeding was scheduled before an IJ at the Batavia immigration court on February 1, 2022, but Petitioner withdrew his request for such a proceeding.  (*Id*. at ¶ 43).

ICE has continued to perform periodic custody reviews and determine that Petitioner will not be released.  (*Id*. at ¶¶ 45-47).  As of the time Respondents filed their answer to the petition, Petitioner's hearing on his withholding claim was scheduled to heard by an immigration judge on November 14, 2022.  (*Id*. at ¶ 49).

DHS has removed thousands of individuals to Guatemala in recent years.  (*Id*. at ¶ 50).  ICE will not be required to secure any travel documents in order to return Petitioner to Guatemala and Guatemala accepts charter flights.  (*Id*.).

## II.   <u>Procedural Background</u>

Petitioner filed the instant petition on August 16, 2022.  (Dkt. 1).  Respondents filed a response on October 14, 2022.  (Dkt 5).   Petitioner was afforded an opportunity to file a reply but did not do so.

## <u>DISCUSSION</u>

## I.   <u>Jurisdiction</u>

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases.  *See* 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding that "§ 2241 habeas corpus proceedings remain available as

a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases).  District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts.  *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

## II.   Legal framework

Petitioner contends that his continuing detention without a "Constitutionally adequate Bond hearing" violates his rights (Dkt. 1 at 1, 4-8).  Petitioner's arguments assume that his detention is pursuant to 8 U.S.C. § 1226(c), which governs detention of certain "criminal aliens."  (*See id*. at 4, 10).  However, in *Johnson v. Guzman Chavez*, __ U.S. __, 141 S. Ct. 2271 (2021), the Supreme Court determined that an individual subject to a reinstated order of removal who is in withholding-only proceedings is detained pursuant to 8 U.S.C. § 1231, which governs detention of individuals subject to a final order of removal.  *Id*. at 2291.  Here, Petitioner was "placed in withholding of removal-only proceedings after a prior order of removal was reinstated[.]"  (Dkt. 5 at 28).  Accordingly, *Guzman Chavez* makes clear that Petitioner's detention is governed by § 1231, because "an alien's initiation of withholding-only proceedings does not render non-final an otherwise 'administratively final' reinstated order of removal."  141 S. Ct. at 2288.

"When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's

removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas*, 533 U.S. at 682.  The removal period begins on the latest of: (1) the date the removal order becomes administratively final; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) the date the alien is released from detention or confinement, unless such detention or confinement is the result of an immigration process. 8 U.S.C. § 1231(a)(1)(B).

After expiration of the 90-day removal period, 8 U.S.C. § 1231(a)(6) allows the Government to continue to detain certain classes of aliens or to release them, subject to appropriate terms of supervision.  *Id*.  In *Zadvydas*, the Supreme Court read "an implicit limitation into" § 1231(a)(6), holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention."  533 U.S. at 689.  The *Zadvydas* Court further adopted a 6-month "presumptively reasonable period of detention," and instructed that "[a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id*. at 701; *see also Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) ("The [*Zadvydas*] Court stated that detention is presumptively reasonable for six months following a final removal order, and that, after the first six months, detention violates § 241 if (1) an alien demonstrates that there is no significant

likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing.").

## III.   Petitioner Has Not Satisfied his Initial Burden under *Zadvydas*

Here, Respondents "do[] not dispute that Petitioner's detention exceeds the presumptively reasonable six-month detainment period: he has been detained by ICE for several years." (Dkt. 5-1 at 11-12). As noted above, after expiration of the presumptively reasonable detention period, Petitioner bears the initial burden to demonstrate that there is good reason to believe there is no significant likelihood he will be removed in the reasonably foreseeable future. *See Pineda v. Shanahan*, 258 F. Supp. 3d 372, 379 (S.D.N.Y. 2017) (noting that *Zadvydas* "places an initial burden on the detainee"). "In analyzing the likelihood of removal, courts consider a variety of factors, including the existence of a repatriation agreement with the target country, the target country's prior record of accepting removed aliens, and specific assurances from the target country regarding its willingness to accept an alien." *Hassoun v. Sessions*, No. 18-cv-586 FPG, 2019 WL 78984, at *4 (W.D.N.Y. Jan. 2, 2019). Further, "[w]hat constitutes the 'reasonably foreseeable future' will depend on the length of detention." *Id.*; *see Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.").

Here, Plaintiff has not satisfied his initial burden. Plaintiff has come forward with no evidence to suggest that he cannot be swiftly removed upon the conclusion of his withholding-only proceedings, assuming he is not successful thereon. The only impediment to removal is the withholding-only proceedings themselves and "a

- 8 -

noncitizen's use of the American judicial process, to the extent it delays removal, does not warrant release under *Zadvydas*."  *Portillo v. Decker*, No. 21 CIV. 9506 (PAE), 2022 WL 826941, at *5 (S.D.N.Y. Mar. 18, 2022).  On the record before the Court, Petitioner is not entitled to habeas relief at this time.

**IV.   Petitioner has not Demonstrated a Due Process Violation**

To the extent Petitioner is otherwise claiming a violation of his right to due process, he has failed to make the necessary showing.  With respect to any claimed substantive due process violation[1], "pursuant to *Zadvydas*, [an immigration detainee's] due process rights are not jeopardized by his continued detention as long as his removal remains reasonably foreseeable."  *Wang*, 320 F.3d at 146; *see also Portillo*, 2022 WL 826941, at *6 ("[The petitioner's] substantive due process claim asserts that, because his removal is not reasonably foreseeable, his Fifth Amendment rights have been violated.  The Court has already rejected the premise of that claim, finding that [his] removal is reasonably foreseeable. That defeats [his] Fifth Amendment claim, as the Second Circuit has held that under *Zadvydas*, a noncitizen's 'due process rights are not jeopardized by his continued detention as long as his removal remains reasonably foreseeable.'" (quoting *Wang*, 320 F.3d at 146)).

---

[1]      In addition to providing a "guarantee of fair procedure," the due process clause "contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quotation omitted).

As to any claim for a violation of the right to procedural due process, Petitioner has "not provided any basis to void as unconstitutional, facially or as applied to him, the processes Congress and the executive branch have put in place to govern the detention of removable noncitizens." *Portillo*, 2022 WL 826941, at *6. To succeed on a facial attack, Petitioner would have to show that "no set of circumstances exists under which the statute would be valid." *United States v. Decastro*, 682 F.3d 160, 163 (2d Cir. 2012) (citation omitted). He has made no such showing here, and numerous courts have concluded that there are circumstances under which § 1231 and its associated regulations pass constitutional muster. *See Portillo*, 2022 WL 826941, at *6 (collecting cases).

As to an as-applied challenge, Petitioner has presented arguments regarding the length of his detention, but has failed to otherwise meaningfully address the specifics of his case or the procedures that were afforded to him. In particular, the Court finds it significant that Petitioner has failed to address the fact that he was scheduled to have a custody proceeding before an IJ in February of 2022 but withdrew his request for that proceeding. (Wood Decl. at ¶ 43; *see* Dkt. 5 at 237); *see Ernest v. Searls*, No. 22-CV-6330 (CJS), 2022 WL 17126526, at *7 (W.D.N.Y. Nov. 22, 2022) (finding the petitioner had not established an as-applied due process violation under § 1231 where he failed to take advantage of available mechanisms for seeking release and further "ha[d] not explained why such process would be constitutionally inadequate for an alien, ordered removed . . . [and] awaiting removal").

To be clear, the Court does not hold that an as-applied challenge to prolonged detention under § 1231 could never be successful. *See Cabrera Galdamez v. Mayorkas*,

No. 22 CIV. 9847 (LGS), 2023 WL 1777310, at *6 (S.D.N.Y. Feb. 6, 2023) (finding the petitioner's prolonged detention under § 1231(a)(6) without a bond hearing violated procedural due process because "Petitioner has provided sufficient evidence that the Government might find difficult to overcome if it had to demonstrate affirmatively that Petitioner poses a risk of flight or danger to the community necessitating his continued detention." (citation and quotation omitted)).  However, Petitioner has not demonstrated an as-applied procedural due process violation on the record currently before the Court.

## V.   Petitioner's Additional Claims Fail

In the petition, Petitioner also asserts that he was sexually assaulted by ICE officers while detained at the Essex County Jail in New Jersey. (Dkt. 1 at 8-9).  These allegations—while horrific if true—are not sufficient to support Petitioner's request for release from his current custody at the BFDF.  *See Razzoli v. Strada*, No. 10-CV-4802 CBA, 2013 WL 837277, at *2 (E.D.N.Y. Mar. 6, 2013) ("A § 2241 challenge to conditions of confinement will be considered moot where the petitioner has been transferred to a different facility."). Petitioner has not demonstrated his entitlement to habeas relief on this basis.

Finally, Petitioner requests relief pursuant to *Fraihat v. ICE*, 445 F. Supp. 3d 709 (C.D. Cal. 2020).  (*See* Dkt. 1 at 9).  In *Fraihat*, the district court—among other things—ordered that all ICE detainees with particular risk factors for COVID-19 be given custody hearings.  445 F. Supp. 3d at 751.  The record in this case shows that Petitioner was given two custody hearings under *Fraihat*.  (Wood Decl. at ¶¶ 38, 45).  In any event, the district court's decision in *Fraihat* was subsequently reversed and remanded by the Ninth Circuit.

*Fraihat v. U.S. Immigr. & Customs Enf't,* 16 F.4th 613 (9th Cir. 2021).   Petitioner has not

demonstrated his entitlement to relief on the basis of *Fraihat*.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court denies the petition.  (Dkt. 1).  The Clerk of

Court is directed to close this case.

SO ORDERED.


ELIZABETH A. WOLFORD
Chief Judge
United States District Court


Dated:          April 10, 2023
                Rochester, New York